J. C. Dickey and his wife, Mary E. Dickey, brought the suit, asking for an injunction restraining the trustee from making an advertised sale at public auction under the foreclosure terms of a mortgage of 200 acres of land on the E. C. Allison league in Cherokee county, and further asking that the mortgage be decreed void as a cloud upon the title to the land, upon the ground that the 200 acres of land was the real homestead of the plaintiffs, and any mortgage or trust deed attempting to give a lien thereon to secure a loan of money was legally invalid and void. The trustee and the mortgagees are the defendants.
The defendants answered by general denial, and specially pleaded, as grounds of estoppel, that they loaned money to plaintiffs and took a mortgage lien on the 200 acres in controversy, besides several other tracts of land, and that at the time of the transaction the plaintiffs "disclaimed" any homestead in the 200 acres, and in writing represented and expressly designated and set apart as their homestead the following lands, to wit:
"100 acres in the Allison H.R. fully described in deed from Mrs. E. A. Dickey, of date April 1, 1916, of record in vol. 71, page 94, in the recorder's office in Cherokee county; and 101 1/2 acres of land in the Allison H.R. survey described in deed from Comfort Prior to J. C. Dickey, of date October 12, 1918, of record in vol. 79, page 245, in the recorder's office of Cherokee county."
The answer further set up the several deeds of trust, the indebtedness due and unpaid, and prayed for judgment for the debt and foreclosure of the mortgage lien.
The plaintiffs demurred to the defendants' answer, and specially alleged that the 200 acres was and is their homestead, and, while they had temporarily left the same, it was not with the intention of abandonment as a homestead. The plaintiff Mary E. Dickey further specially replied to the defendants' answer that at the time she signed the deed of trust she did not know that it contained a designation of another tract as her homestead, and that she never represented to the mortgagees that the other tract was her homestead; that she relied upon representations and statements of her husband that the 200 acres had been designated as their homestead, and that she signed the deed of trust relying upon such statement as true, and that the notary did not explain the instrument to her and did not examine her privily and apart from her husband; that fraud was practiced on her both by her husband and defendant Dodson in causing the mortgage to recite the designation of the other tract as her homestead; that she never acknowledged the mortgage, and on account thereof it was void as a conveyance of the homestead of 200 acres; that she did no act and made no statement which did or could have misled the defendants, by which she could be estopped from setting up her homestead rights.
The defendants, by supplemental answer, replied to the plaintiffs' supplemental petition, alleging:
"That the plaintiffs carried the defendant Dodson on the premises and pointed out to him as their homestead the property designated (as set out in the original answer), and the defendants, relying on such statements and representations, made the loan and took the deed of trust as set out in the original answer. DeFendants say that the plaintiffs are bound by their original designation because, if the land was in fact their homestead, they made false representations to the defendants and thereby induced them to advance the amount of money loaned."
The plaintiffs made reply to the defendants' supplemental answer and averred that hey did not point out to defendant Dodson the 201 1/2 acres of land as their homestead —
"but say they pointed out and informed the said Dodson that the tract described in their petition (the 200 acres) was their homestead *Page 616 
and that the said Dodson fraudulently inserted and described the other and different tracts in the deed of trust without their consent or knowledge, and neither of them knew that such had been done until the land was advertised for sale."
The case was tried before the court without a jury, and the court, in accordance with his findings of fact, entered judgment in favor of plaintiffs, restraining a sale of the 200 acres as a homestead, but awarding a judgment in favor of the defendants on their cross-action for the amount of the debt sued for, and also for a foreclosure of the mortgage lien on the other tracts of land in suit.
The court made the following findings of fact, viz.:
"The court, after hearing the evidence and argument of counsel, reserved his findings until the 29th day of December, 1921, and now finds as follows: That the plaintiffs J. C. Dickey and wife, Mary E. Dickey are entitled to the relief prayed for as the hereinafter described land is their homestead; that on the 19th day of August, 1919, and at all times thereafter, the homestead of the plaintiffs is the 200 acres of land described as follows (here follows description); that the deed of trust dated August 19, 1919, and executed August 26. 1919, by J. C. Dickey and Mary E. Dickey on the above described land was void."
It appears that J. C. Dickey applied to appellants for a loan of $12,000. At the time Mr. Dickey applied for the loan he owned 626 1/2 acres of land. The land consisted of several tracts on the same headright survey, and had been acquired at different times. The first tract acquired was the 200-acre tract, and about which is the present suit. Afterwards there was acquired a tract of 201 1/2 acres adjoining the 200 acres on the east, and then 225 acres adjoining the 200 acres on the west. The 200 acres was used and occupied by Mr. Dickey, his wife, and children as their homestead for about four years prior to October, 1918. About October, 1918, when the 201 1/2 acres were purchased, Mr. Dickey and his family moved from the 200 acres to the 201 1/2 acres, in order, as they testified, to be nearer to a school that the three oldest of the children, then between 6 and 8 years of age, were attending. Mr. and Mr. Dickey testified that —
"When we went to this place we did not go there with the intention of making it our permanent home. Our intention and expectation was to go back to the old place after the children got large enough to go to school from there; that is, to go to school by themselves. Have never changed that intention."
On August 19, 1919, while Mr. Dickey and his family were residing upon the 201 1/2-acres of land, three deeds of trust or mortgages were given to secure payment of borrowed money. A deed of trust was executed for $3,500 on the 225-acre tract, a deed of trust was executed for $3,500 on the 200-acre tract, and a deed of trust was executed on the 201 1/2-acre tract for $4,000, to take up original purchase-money notes on said 201 1/2-acre tract. The husband and wife both signed the several instruments, and they were recorded in the office of the county clerk. There appears on the instruments an acknowledgment in the form required by law, but the wife testified that she was not examined privily and apart from her husband, and that the instruments were not explained to her by the notary. In each of these instruments appears the following:
"The parties of the first part (Mr. and Mrs. Dickey) hereby declared that the property hereinbefore mentioned and conveyed to said party of the second part forms no part of any property by them owned, used or claimed as exempted from forced sale under the laws of the state of Texas, and renounce and disclaim all and every claim thereto under such laws, and hereby designate the following described property to wit (here follows description of the 201 1/2-acre tract) as a homestead and as constituting all property of nature similar to that herein conveyed owned, used, or claimed by the first parties hereto as exempt under such laws."
Mr. Dodson, one of the appellants, made a visit to the land to inspect it with the view of passing on the application for the loan. According to his testimony he knew only concerning the land and the use made of it, and concerning the homestead what he saw and was told by Mr. Dickey on his trip of inspection. On his visit he saw the occupancy by Mr. and Mrs. Dickey of the 201 1/2-acre tract and that the 200-acre tract was not occupied by them. He testified that Mr. Dickey told him that his home was on the 201 1/2-acre tract. Mrs. Dickey, during the 10-minute stay of Mr. Dodson at the house, made no statement whatever to Mr. Dodson concerning the homestead claim, as both he and she testify. Mr. Dickey testifies as follows:
"I showed him (Mr. Dodson) where we were living; that was the first place we came to. Then I carried him to the next 100 acres, which was in the next block to the 100 acres we were living on, and told him there was 201 1/2-acres; that I was owing on it and wanted to borrow money on it. Then we went on until we came to the old homestead, and I told him that was the 200 acres of land that I was born and raised on, and that I didn't owe anything on it and I did not want to borrow anything on it. Then we went on the 225 acres and I told him, after I showed it to him, that I was owing on that and I wanted to borrow some money on it. We first went to the Pryor tract (the 201 1/2 acres), then to the 200 acres I wanted to reserve as my homestead, and then to the other tract. * * * I showed him all the land we had; we had to go across the home piece while I was showing it to him. I showed him that 200 acres too, but I told him it was my homestead." *Page 617 
He further testifies that he never signed any application for the loan stating therein that the 201 1/2-acre tract was his homestead, and that at the time he signed the mortgage he believed that the 200-acre tract was designated as the home, and did not know that the 201 1/2-acre tract was designated and declared to be the home. "He (Mr. Dodson) did not," as Mr. Dickey testifies, "ask me and I didn't tell him before I signed the application that my homestead was the 101 1/2 acres of the Allison survey, and it wasn't written down here in my presence before I signed it. I signed that, but I did not make that declaration. I put in my 200 acres as my homestead, and if it contained the designation of 201 1/2 acres as my homestead it was not true. I didn't designate it."
Mrs. Dickey testified, in substance: That the deeds of trust were not explained to her, and that they were not read to her, and that she signed them without knowing "what I was signing." That the attorney for appellants told her and her husband:
"That the papers were fixed up according to the understanding which had been explained to her, that the homestead was designated as the place they really claimed then and now as a home."
That her husband told her he was not giving a mortgage on their home land, and that all she knew about it was that her "husband told me to sign the papers, as he had reserved the 200 acres as the homestead." It does not appear that Mr. and Mrs. Dickey could not read and write, nor that appellants denied them the opportunity to read over the deed of trust before they signed it.
The fourth assignment of error complains that "the court erred in overruling the defendants' plea of estoppel and in rendering the judgment herein." It is not quite clear whether the assignment is complaining specially of the action of the court in sustaining a general demurrer to the defendants' pleadings of estoppel, or is complaining specially of a finding on the evidence against the appellants' plea of estoppel. Neither is the language of the order or judgment quite clear respecting the ruling of the court concerning the defendants' pleas of estoppel. But considering the record in the light of the order and of the court's findings of fact, it is concluded that the record should be construed as showing that the court sustained the demurrer of the plaintiffs to the defendants' plea of estoppel. We further think that the assignment of error is directed to the ruling sustaining the demurrer. The plea, we think, was not subject to a general demurrer, even though a special exception may properly have reached part of the plea.
This error would and does require a reversal of the judgment and a remand of the cause for another trial, and it is accordingly so ordered.